## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RASSELYN BREARY, BREANNA MOTTER, and ALLISON NEBEL, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>BYHEART, INC.,<br><br>        Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs, Rasselyn Breary, Breanna Motter, and Allison Nebel (hereinafter "Plaintiffs"), individually and on behalf of all others similarly situated, by their attorneys, allege the following upon information and belief, except for those allegations pertaining to Plaintiffs, which are based on personal knowledge:

### NATURE OF THE ACTION

1.        This action seeks to remedy the deceptive and misleading business practices of ByHeart, Inc. (hereinafter "Defendant") with respect to the manufacturing, marketing, and sale of Defendant's ByHeart infant formula products throughout the United States (hereinafter the "Products").

2.        Defendant has improperly, deceptively, and misleadingly labeled and marketed its Products to reasonable consumers, like Plaintiffs, by omitting and not disclosing to consumers on its packaging that the Products are contaminated with *Clostridium botulinum,* also known as infant botulism.

3.        As described in further detail below, the Products contain *Clostridium botulinum* which could lead to serious and life-threatening adverse health consequences.  Per the

FDA:

> Infant botulism is a rare but potentially fatal illness that presents a serious threat to the health of infants which occurs when *Clostridium botulinum* spores are ingested and colonize the intestinal tract, producing botulinum neurotoxins in the immature gut of infants. Affected infants can present with some or all of the following signs and symptoms: constipation, poor feeding, ptosis (drooping eyelid), sluggish pupils, low muscle tone, difficulty sucking and swallowing, weak or altered cry, generalized weakness, respiratory difficulty, and possibly respiratory arrest.

4.      On November 8, 2025, preliminary test results reported by the California Department of Public Health confirmed the presence of *Clostridium botulinum* in a can of ByHeart infant formula that was fed to an infant with confirmed infant botulism.[1]

5.      On November 19, 2025, Defendant announced that testing conducted by IEH Laboratories & Consulting Group ("IEH") on Defendant's behalf confirmed Clostridium botulinum in samples of infant formula provided to IEH by Defendant.[2]

6.      Plaintiffs and those similarly situated (hereinafter "Class Members") certainly expect that the infant baby formula products they purchase will not contain, or risk containing, any knowingly harmful substances that cause severe disease and even be life threatening.

7.      Unfortunately for consumers, including Plaintiffs, the infant formulas Products they purchased contain *Clostridium botulinum*.

8.      Defendant is using a marketing and advertising campaign that omits from the packaging that the Products contain, or risk containing, *Clostridium botulinum*. Knowing of the presence of *Clostridium botulinum* is material to reasonable consumers. The presence of *Clostridium botulinum* was solely within the possession of Defendant, and consumers could only

---

[1] https://www.fda.gov/food/outbreaks-foodborne-illness/outbreak-investigation-infant-botulism-infant-formula-november-2025
[2] https://byheart.com/pages/an-update-from-our-founders-on-our-voluntary-recall-november-2025

obtain such information by conducting by sending the products off to a laboratory for extensive testing. This omission leads a reasonable consumer to believe they are not purchasing a product with a known bacterium such as *Clostridium botulinum* when in fact they are purchasing a product that is indeed contaminated with the dangerous bacterium *Clostridium botulinum*.

9.      A representative example of Defendant's lack of disclosure on the Products is depicted below:



10.     Consumers like Plaintiffs trust manufacturers like Defendant to sell products that are safe and free from harmful known substances, including *Clostridium botulinum*.

11.     Plaintiffs and other Class Members certainly expect that the food products they purchase will not contain, or risk containing, any knowingly harmful substances that cause disease.

12.     Unfortunately for consumers, including Plaintiffs, the baby infant Products they

purchased contained, or were at risk of containing, *Clostridium botulinum*.

13.    Defendant's own recall and other testing confirmed and demonstrated the presence of the dangerous bacterium *Clostridium botulinum* in the Plaintiffs' products.

**Defendant's Recall is Insufficient**

14.    Defendant issued a recall of certain lots of its Products on November 8, 2025,[3] followed by a complete Product recall on November 11, 2025.[4]

15.    The recall notice says:

What Consumers Should Do: Consumers who have purchased ByHeart Whole Nutrition Infant Formula cans and Anywhere Pack™ should immediately discontinue use and dispose of the product.[5]

16.    Defendant's website states that: "At this moment, the most important thing for you to know is that all ByHeart product must be discarded."[6]

17.    However, there is no mention about a refund. A consumer looking for their refund options would need to dig into the recall FAQs to find ByHeart's guidance that: "If you purchased ByHeart through one of our retail partners or Amazon, please contact the retailer directly and they will assist you with your refund options."  In other words, Defendant designed its "recall" to shift responsibility onto retailers who did not manufacture, market, or distribute the tainted Product.

18.    Defendant is well aware that any consumer who was made aware of the recall would be predisposed to throwing the Products away, and Defendant leans into this predisposition by directing consumer to throw the Products away. Defendant is also aware that consumers shop

---

[3] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/response-broader-fda-investigation-byheart-initiates-voluntary-recall-two-batches-infant-formula
[4] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/byheart-broadens-voluntary-recall-while-investigation-continues
[5] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/byheart-broadens-voluntary-recall-while-investigation-continues
[6] https://byheart.com/

in multiple locations and may or may not purchase the Products at the same location each time. Also, most consumers do not maintain receipts and therefore cannot obtain a refund at the purchase location for the recalled Products.

19.     Accordingly, Defendant's recall is designed to minimize Defendant's own liability, to reach very few people, and to benefit very few of the consumers who purchased the Products.

20.     Moreover, Defendant's recall is inadequate because as of November 19, 2025, cans of the Products could still be found available for purchase at multiple retailers, including Target, Walmart, Kroger, Sprouts Organic Market, Safeway, Jewel-Osco, Shaw's, and Star Market.[7][8]

21.     The class action remedy is superior to Defendant's failed recall in every conceivable fashion.

22.     Defendant is using a marketing and advertising campaign that omits from the packaging that the Products contain *Clostridium botulinum*. This omission leads a reasonable consumer to believe they are not purchasing a product that contains foodborne illness of *Clostridium botulinum* when in fact they are purchasing a product contaminated with *Clostridium botulinum*.

23.     Defendant's marketing and advertising campaign includes the one place that every consumer looks when purchasing a product – the packaging and labels themselves. As such, a reasonable consumer reviewing Defendant's labels reasonably believes that they are purchasing products that are safe for oral ingestion and do not contain any harmful ingredients. Indeed, consumers expect the packaging and labels to accurately disclose the presence of such foodborne illness within the Products. Thus, reasonable consumers would not think that Defendant is omitting

[7] https://www.npr.org/2025/11/20/nx-s1-5615060/byheart-baby-formula-botulism-recall
[8] https://www.fda.gov/food/outbreaks-foodborne-illness/outbreak-investigation-infant-botulism-infant-formula-november-2025

21

that the Products contain, or are at risk of containing, *Clostridium botulinum.*

24.     Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Products do contain, or risk containing, *Clostridium botulinum*, which is dangerous to one's health and well-being. Nevertheless, Defendant does not list or mention *Clostridium botulinum* anywhere on the Products' packaging or labeling.

25.     Defendant's misrepresentations and omissions of the safety of the Products and what is in the Products was material to Plaintiffs and Class Members. Consequently, Plaintiffs and Class Members lost the entire benefit of their bargain when what they received was a food product contaminated with *Clostridium botulinum* that is harmful to consumers' health.

26.     That is because Defendant's Products containing, or at risk of *Clostridium botulinum* have no value, or at the very least, Defendant was able to charge significantly more for the Products than they would have had they not omitted the fact that the Products contain—or possibly contain— *Clostridium botulinum.*

27.     As set forth below, Defendant's Products are in no way safe for human consumption and are entirely worthless.

28.     Alternatively, Plaintiffs and Class Members paid a price premium for the Products based upon Defendant's marketing and advertising campaign including its false and misleading representations and omission on the Products' labels.  Given that Plaintiffs and Class Members paid a premium for the Products, Plaintiffs and Class Members suffered an injury in the amount of the premium paid.

29.     Accordingly, Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350, Minnesota Statute §§ 325F.67, *et. seq.* and 325F.68, *et seq.*, and Illinois Consumer Fraud Act 815 Ill. Comp. Stat. 505/1, *et seq.* Defendant

also breached and continues to breach its warranties regarding the Products.

30.    Plaintiffs bring this action against Defendant on behalf of themselves and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

31.    Defendant manufactures, markets, advertises, and sells food products.

32.    Consumers have become increasingly concerned about the effects of ingredients in products that they orally ingest. Companies, such as Defendant, have capitalized on consumers' desire for food products, and indeed, consumers are willing to pay, and have paid, a premium for these products.

33.    Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances, such as botulism, especially at the point of sale, and therefore must and do rely on Defendant to truthfully and honestly report what the Products contain or are at risk of containing on the Products' packaging or labels.

34.    The Products' packaging does not identify *Clostridium botulinum*. Indeed, *Clostridium botulinum* is not listed anywhere on the packaging, nor is there any warning about the inclusion (or even potential inclusion) of *Clostridium botulinum* in the Products. This leads reasonable consumers to believe the Products do not contain, and are not at risk of containing, *Clostridium botulinum*.

35.    However, the Products contain, or are at risk of containing, *Clostridium botulinum*.

36.    Defendant is a large and sophisticated corporation that has been in the business of producing, manufacturing, selling, and distributing food products for many years, including producing and manufacturing the contaminated Products.

37.    Defendant is in the unique and superior position of knowing the ingredients and

21

raw materials used in the manufacturing of its Products and possesses unique and superior knowledge regarding the manufacturing process of the Products, the manufacturing process of the ingredients and raw materials the Products contain, and the risks associated with those processes, such as the risk of *Clostridium botulinum* contamination, as well as the ability to test the Products for *Clostridium botulinum* contamination prior to releasing the Products into the stream of commerce. Such knowledge is solely within the possession of Defendant.

38.    For example, in August 2023, the FDA sent Defendant a warning letter that they were in violation of the FDCA because "FDA investigators found significant violations of Title 21, Code of Federal Regulations, Part 106 (21 C.F.R. Part 106), Infant Formula Requirements Pertaining to Current Good Manufacturing Practice, Quality Control Procedures, Quality Factors, Records and Reports, and Notifications ("the Infant Formula Rule")."[9]

39.    Accordingly, Defendant possesses superior knowledge regarding the risks involved in the production and manufacturing of its Products. Such knowledge is not readily available to consumers like Plaintiffs and Class Members.

40.    Defendant has a duty to provide consumers, like Plaintiffs and Class Members, with accurate information about the contents of the Products.

41.    Therefore, Defendant's false, misleading, and deceptive omissions regarding the Products containing *Clostridium botulinum* is likely to continue to deceive and mislead reasonable consumers, as they have already deceived and misled Plaintiffs and the Class Members.

42.    Defendant's misrepresentations and omissions were material and intentional because people are concerned with what is in the products that they orally ingest. Consumers such as Plaintiffs and the Class Members are influenced by the marketing and advertising campaign, the

---

[9] https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/byheart-inc-653854-08302023

Products' labels, and the listed ingredients. Defendant knows that if they had not omitted that the Products contained *Clostridium botulinum*, then Plaintiffs and the Class would not have purchased the Products, or, at the very least, would not have paid nearly as much for the Products.

43.     Consumers rely on marketing and information in making purchasing decisions.

44.     By omitting that the Products include botulism on the labels of the Products throughout the Class Period, Defendant knows that those omissions are material to consumers since they would not purchase a product that contained *Clostridium botulinum*.

45.     Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

46.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiffs and the Class Members.

47.     In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for a product marketed without *Clostridium botulinum* over comparable products not so marketed.

48.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representation and omission, Defendant injured Plaintiffs and the Class Members in that they:

        a.    Paid a sum of money for Products that were not as Defendant represented;

        b.    Paid a premium price for Products based on Defendant's false and misleading misrepresentations;

        c.    Were deprived of the benefit of the bargain because the Products they purchased was different from what Defendant

warranted;

d.    Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented; and

e.    Were denied the benefit of the properties of the Products Defendant promised.

49.    Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiffs and the Class Members would not have been willing to pay the same amount for the Products they purchased and/or Plaintiffs and the Class Members would not have been willing to purchase the Products.

50.    Plaintiffs and the Class Members paid for Products that do not contain *Clostridium botulinum*. Since the Products do indeed or possibly contain *Clostridium botulinum*, the Products Plaintiffs and the Class Members received were worth less than the Products for which they paid.

51.    Plaintiffs and the Class Members all paid money for the Products; however, Plaintiffs and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions. Plaintiffs and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. Consequently, Plaintiffs and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

52.    Plaintiffs and Class Members saw the Products' packaging prior to purchasing the Products. Had Plaintiffs and Class Members known the truth about the Products, i.e., that they do or possibly contain infant botulism, they would not have been willing to purchase them at any price, or, at minimum would have paid less for them.

## **JURISDICTION AND VENUE**

53.    This Court has subject matter jurisdiction under the Class Action Fairness Act, 28

U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 class members; (2) Plaintiff Motter is a citizen of Minnesota and Plaintiff Nebel is a citizen of Illinois, and Defendant ByHeart Inc. is a citizen of New York; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

54.    This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, is headquartered in New York, New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

55.    Venue is proper because Defendant ByHeart, Inc. is headquartered in New York, New York within the Southern District of New York. A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

**PARTIES**

**Plaintiffs**

56.    Plaintiff Rasselyn Breary is a citizen and resident of Brooklyn, New York. During the applicable statute of limitations period, Plaintiff Breary purchased and used Defendant's Products that possibly contained, or had the risk of containing *Clostridium botulinum*. Most recently, Plaintiff purchased her Products from Amazon.com on September 26, 2025. Prior to purchasing the Product, Plaintiff Breary saw the packaging of the Product.

57.    Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the contents of the Products, Plaintiff Breary would not have been willing to purchase the Products or pay as much for the Products. Plaintiff purchased, purchased more of, and/or paid more for, the Products than she would have had she known the truth about the Products. The Products Plaintiff received were worthless because they possibly contained *Clostridium botulinum*. Alternatively, Plaintiff Breary paid a price premium based on Defendant's

21

false, misleading, and deceptive misrepresentations and omissions. Accordingly, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

58.    Plaintiff Breanna Motter is a citizen and resident of Grand Rapids, Minnesota. During the applicable statute of limitations period, Plaintiff Motter purchased and used Defendant's Products that possibly contained, or had the risk of containing *Clostridium botulinum*. Most recently, Plaintiff purchased her Products from Walmart and Target in October and November 2025.  Prior to purchasing the Product, Plaintiff Motter saw the packaging of the Product.

59.    Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the contents of the Products, Plaintiff Motter would not have been willing to purchase the Products or pay as much for the Products. Plaintiff Motter purchased, purchased more of, and/or paid more for, the Products than she would have had she known the truth about the Products.  The Products Plaintiff received were worthless because they possibly contained *Clostridium botulinum*. Alternatively, Plaintiff Motter paid a price premium based on Defendant's false, misleading, and deceptive misrepresentations and omissions. Accordingly, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

60.    Plaintiff Allison Nebel is a citizen and resident of Lake in the Hills, Illinois. During the applicable statute of limitations period, Plaintiff Nebel purchased and used Defendant's Products that possibly contained, or had the risk of containing *Clostridium botulinum*. Most recently, Plaintiff purchased her Products from Target in Algonquin, Illinois in November 2025. Prior to purchasing the Product, Plaintiff Nebel saw the packaging of the Product.

61.    Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the contents of the Products, Plaintiff Nebel would not have been willing to

purchase the Products or pay as much for the Products. Plaintiff Nebel purchased, purchased more of, and/or paid more for, the Products than she would have had she known the truth about the Products. The Products Plaintiff received were worthless because they possibly contained *Clostridium botulinum*. Alternatively, Plaintiff Nebel paid a price premium based on Defendant's false, misleading, and deceptive misrepresentations and omissions. Accordingly, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

### **Defendant**

62.     Defendant, ByHeart, Inc. is a Delaware corporation with its headquarters and principal place of business in New York, New York.

63.     Defendant manufactures, markets, advertises, and distributes the Products throughout the United States. Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of its Products.

## **CLASS ALLEGATIONS**

64.     Plaintiffs bring this matter on of themselves and those similarly situated. As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices. Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

65.     The Class is defined as all consumers who purchased the Products anywhere in the United States within the applicable statute of limitations.

66.     Plaintiffs also seek to represent a subclass of individuals who purchased any of the Products in the state of New York within the applicable statute of limitations (the "New York Subclass").

67.     Plaintiff Motter also seeks to represent a subclass of individuals who purchased any of the Products in the state of Minnesota within the applicable statute of limitations (the

"Minnesota Subclass").

68.     Plaintiff Nebel also seeks to represent a subclass of individuals who purchased any of the Products in the state of Illinois within the applicable statute of limitations (the "Illinois Subclass").

69.     The Class, New York Subclass, Minnesota Subclass, and Illinois Subclass are referred to collectively throughout the Complaint as the Class.

70.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

71.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiffs believe that there are thousands of consumers in the Class and Subclasses who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

72.     <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

      a.     Whether Defendant was responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

      b.     Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

      c.     Whether Defendant made false and/or misleading statements and

21

omissions to the Class and the public concerning the contents of its Products;

    d.    Whether Defendant's false and misleading statements and omissions concerning its Products were likely to deceive the public; and

    e.    Whether Plaintiffs and the Class are entitled to money damages under the same causes of action as the other Class Members.

73.    <u>Typicality</u>: Plaintiffs are members of the Class and their respective Subclasses. Plaintiffs' claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products. Plaintiffs are entitled to relief under the same causes of action as the other Class Members.

74.    <u>Adequacy</u>: Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the Class Members they seek to represent, their consumer fraud claims are common to all members of the Class, they have a strong interest in vindicating their rights, they have retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

75.    <u>Predominance</u>: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class and Subclasses. The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

76.    <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

    a.    The joinder of thousands of individual Class Members is impracticable,

cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.      The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c.      When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.      This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.      Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude their maintenance as a class action;

f.      This class action will assure uniformity of decisions among Class Members;

g.      The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.      Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action; and

i.      It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendant's uniform false

advertising to purchase its Products.

77.    Accordingly, this Class Action lawsuit is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CLAIMS

### FIRST CAUSE OF ACTION
**Violation of New York GBL § 349**
**(On Behalf of Plaintiffs and Nationwide Class)**

78.    Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

79.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

80.    The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiffs and other Class Members seek monetary damages against Defendant, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products.

81.    There is no adequate remedy at law.

82.    Defendant misleadingly, inaccurately, and deceptively advertises and markets its Products to consumers.

83.    Defendant's improper consumer-oriented conduct—including failing to disclose that the Products have, or had the risk of having, *Clostridium botulinum* —is misleading in a material way in that it, *inter alia*, induced Plaintiffs and other Class Members to purchase

21

Defendant's Products and to use the Products when they otherwise would not have. Defendant made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

84.     Plaintiffs and other Class Members have been injured because they purchased Products that were mislabeled, unhealthy, and entirely worthless. Accordingly, Plaintiffs and the Class Members received less than what they bargained and paid for.

85.     Defendant's advertising and Products' packaging and labeling induced Plaintiffs and other Class Members to buy Defendant's Products.

86.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiffs and other Class Members have been damaged thereby.

87.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiffs and other Class Members are entitled to monetary, statutory, compensatory, treble and punitive damages, interest, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### Violation of New York GBL § 350
### (On Behalf of Plaintiffs and the Nationwide Class)

88.     Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

89.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

90.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment

21

opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

91. Defendant's labeling and advertisements contain untrue and materially misleading statements and omissions concerning its Products because it misrepresents that the Products are safe for use and doesn't list that the Products contain infant botulism.

92. Plaintiffs and the other Class Members have been injured because they saw the labeling, packaging, and advertising and purchased Products that were mislabeled, unhealthy, and entirely worthless. Accordingly, Plaintiffs and other Class Members received less than what they bargained and paid for.

93. Defendant's advertising, packaging, and Products' labeling induced Plaintiffs and other Class Members to buy Defendant's Products.

94. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

95. Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

96. Defendant made the material misrepresentations described in this Complaint in its advertising and on the Products' packaging and labeling.

97. Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

98.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiffs and other Class Members are entitled to monetary, statutory, compensatory, treble and punitive damages, interest, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
**Negligence**
**(On Behalf of Plaintiffs and the Nationwide Class)**

99.     Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

100.    The conduct of Defendant in manufacturing, distributing, and selling the Products with the contamination of infant botulism constituted negligence in failing to reasonably act in accordance with all applicable standards of care. Defendant owed Plaintiffs and Class members a duty not to disseminate a materially defective product. Defendant breached said duty of care when it nevertheless manufactured, distributed, and sold the Products with the contamination of *Clostridium botulinum* to consumers, including Plaintiffs.

101.    Defendant also breached its duty of care by negligently failing to timely and/or adequately warn Plaintiffs and the Class of the contamination of infant botulism, even after Defendant was, or should have been, fully aware of the manufacturing defect in the Products.

102.    As a direct and proximate result of Defendant's negligence, Plaintiffs and Class Members suffered economic injury, entitling them to just compensation, as detailed below.

### FOURTH CAUSE OF ACTION
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Nationwide Class)**

103.    Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

104.    Defendant was unjustly enriched at the expense of Plaintiffs and other Class

Members in the form of monies that Plaintiffs and other Class Members paid for the Products.

105.    Plaintiffs and Class Members seek restitution and disgorgement of such inequitably obtained monies.

### FIFTH CAUSE OF ACTION
### Violation of the Illinois Consumer Fraud Act
### (815 ILCS 505/1 *et seq.*)
### (On Behalf of Plaintiff Nebel and the Illinois Subclass)

106.    Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

107.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), §§ 815 ILCS 505/1, *et seq.*, prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce. The ICFA is to be liberally construed to effectuate its purpose.

108.    By the conduct described in detail above and incorporated herein, Defendant engaged in unfair or deceptive acts in violation of the Illinois Consumer Fraud Act.

109.    Defendant's representations and omissions regarding the Products and their contamination with *Clostridium botulinum*, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Products.

110.    Defendant intended for class members to rely on Defendant's omissions regarding the Products.

111.    Plaintiff and the other Illinois Subclass members justifiably acted or relied to their detriment upon the omissions of fact concerning the Products, as evidenced by Plaintiff and the other Class members' purchases of Products.

112.    Had Defendant disclosed all material information regarding the Products to Plaintiff and Subclass members, Plaintiff and Subclass members would not have purchased or the Products or would have paid less to do so.

113.    Defendant's representations and omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and members of the Subclass.

114.    In addition to being deceptive, the business practices were unfair because Defendant knowingly sold Plaintiff and Subclass members Products contaminated with *Clostridium botulinum*. The injuries to Plaintiff and Subclass members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and Subclass members or to competition under all of the circumstances. Moreover, in light of Defendant's exclusive knowledge of the *Clostridium botulinum* contamination, the injury is not one that Plaintiff or Subclass members could have reasonably avoided.

115.    As a direct and proximate result of the unfair and deceptive trade practices, Plaintiff and Subclass members have suffered ascertainable loss and actual damages. Plaintiff and Subclass members who purchased the Products would not have purchased the Products, or, alternatively, would have paid less for them had the truth about the Products been disclosed.

116.    Plaintiff Nebel and the Illinois Subclass seeks all available relief under this statutory cause of action.

### SIXTH CAUSE OF ACTION
**Violation of the Minnesota Prevention of
Consumer Fraud Act (Minn. Stat. § 325F.68, *et seq.*)
(On Behalf of Plaintiff Motter and the Minnesota
Subclass)**

117.    Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

118.    Minnesota's Private Attorney General Statute (Minn. Stat. § 8.31, subd. 3a) allows Plaintiff Motter and the Class to bring a claim under Minn. Stat. § 325F.69.

119.    The Minnesota Prevention of Consumer Fraud Act prohibits "[t]he act, use, or

employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely therein in in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby. . ." Minn. Stat. § 325F.69(1). Defendant advertised and represented to Plaintiff Motter and members of the Minnesota Subclass that the Products possessed certain qualities and characteristics, including but not limited to the representation that the Products were suitable for infants, when in fact they contained *Clostridium botulinum.*

120.    Defendant's made advertisements and representations to Plaintiffs and the Class that the Products were suitable for infants, when in fact the Products contained *Clostridium botulinum.*

121.    Defendant intended for Plaintiffs and the Class to rely upon, and accept as true, the representations and omissions with respect to the suitability of the Products for infants.

122.    Defendant's representations and omissions with respect to the suitability of the Products for infants in connection with the sale of the Products to Plaintiff and the Class

123.    Defendant intentionally and/or knowingly misrepresented that the Products were suitable for infants to Plaintiff Motter and the Class.

124.    Defendant's unfair or deceptive acts or practices were likely to deceive reasonable consumers that the Products were suitable for infants when in fact the Products contained *Clostridium botulinum*

125.    Plaintiff and the Minnesota Subclass relied upon, and were in fact deceived by, Defendant's representations in deciding to purchase the Products over similar products offered by competitors.

126.    Plaintiff and the Subclass were injured in fact and suffered actual damages as a

result of their reliance on Defendant's representations and omissions with respect to the Product's suitability for infants.  Defendant's wrongful conduct was the direct and proximate cause of the injuries to Plaintiff and the Subclass.  Because of Defendant's fraudulent conduct, the value of the Products has been greatly diminished.

127.    Had Plaintiff and the Subclass been aware the Products contained *Clostridium botulinum,* they would have either paid less for their Products or would not have purchased them at all.  Plaintiff and the Subclass did not receive the benefit of their bargain as a result of Defendant's misconduct.

128.    Pursuant to Minn. Stat. § 8.31, subd. 3a, Plaintiffs and the Subclass seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota Prevention of Consumer Fraud Act.

**SEVENTH CAUSE OF ACTION**
**False Advertising**
**(Minn. Stat. § 325F.67, *et seq.*)**
**(On Behalf of Plaintiff Motter and the Minnesota**
**Subclass)**

129.    Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

130.    Minnesota's False Statement in Advertising Act ("FSAA"), Minn. Stat. § 325F.67, provides a cause of action to "any person, firm, corporation, or association" who purchases goods or services through advertising which "contains any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading."

131.    Where, as here, Plaintiff's claims inure to the public benefit, Minnesota's Private-Attorney General Statute, Minn. Stat. § 8.31, subd. 3a, allows individuals who have been injured through a violation of the FSAA to bring a civil action and recover damages, together with costs and disbursements, including reasonable attorney's fees.

132.    By engaging in the conduct herein, Defendant violated and continue to violate Minn. Stat. § 325F.67.

133.    Defendant's misrepresentations, knowing omissions, and use of other sharp business practices include, by way of example:

       a.     Defendant's fraudulent, misleading, and deceptive statements and omissions relating to the true quality and characteristics of the Products;

       b.     Defendant's fraud and misrepresentations by omission with respect to information about the Products and Defendant's knowledge of the falsity of those representations;

       c.     Defendant's concealment of the true nature of the Products and *Clostridium botulinum* contamination; and

       d.     Defendant's omission that the Products were not suitable for infants because they were contaminated with *Clostridium botulinum*.

134.    As a result of Defendant's conduct, Plaintiff and those similarly situated have suffered actual damages in that they have purchased Products that were deceptively sold and worth less than the price they paid.  There is an association between Defendant's acts and omissions as alleged herein and the damages suffered by Plaintiff and those similarly situated.

135.    As a result of Defendant's untrue, deceptive, and misleading assertions and representations about the Products, Plaintiff and the Minnesota Subclass have suffered damages because they would have either paid less for their Products or would not have purchased them at all had they known the Products were contaminated with *Clostridium botulinum*. Plaintiff and the Subclass did not receive the benefit of their bargain as a result of Defendant's misconduct.

136.    Pursuant to Minn. Stat. § 8.31, subd. 3a, Plaintiff and the Minnesota Subclass seek

actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota Prevention of Consumer Fraud Act.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiffs as the representative of the Class and New York Subclass under Rule 23 of the FRCP, Plaintiff Nebel as representative of the Illinois Subclass, Plaintiff Motter as representative of the Minnesota Subclass, and naming Plaintiffs' attorneys as Class Counsel to represent the Class and Subclass members;

(b) Declaring that Defendant is financially responsible for notifying Class Members of the pendency of this suit;

(c) Awarding compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(d) Ordering Defendant to pay pre-judgment interest on all amounts awarded;

(e) Awarding Plaintiffs and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiffs' attorneys, experts, and reimbursement of Plaintiffs' expenses; and

(f) Granting such other and further relief as the Court may deem just and proper.

Dated: November 24, 2025

Respectfully submitted,

**BRYSON HARRIS SUCIU
& DEMAY PLLC**

By:    /s/ Russell M. Busch

Russell M. Busch
11 Park Place, 3rd Floor
New York, NY 10007
Tel: (919) 926-7948
rbusch@brysonpllc.com

Nick Suciu III*
**BRYSON HARRIS SUCIU
& DEMAY PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel: (616) 678-3180
nsuciu@brysonpllc.com

Brittany S. Scott*
**SMITH KRIVOSHEY, PC**
28 Geary Str Ste. 650 No. 1507
San Francisco, CA 94108
Telephone: 415-839-7077
Facsimile: 888-410-0415
E-Mail: brittany@skclassactions.com

Jason P. Sultzer, Esq.
Daniel Markowitz, Esq.
**SULTZER & LIPARI, PLLC**
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
markowitzd@thesultzerlawgroup.com

*Counsel for Plaintiffs and the Class*

*\*Pro hac vice forthcoming*

21